# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| **v.** | : **3:17-CR-00276** |
| | : **(JUDGE MARIANI)** |
| **SHAWN HILL,** | : |
| | : |
| **Defendant.** | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court are Defendant Shawn Hill's Motion to Sever Counts (Doc. 35) and Motion for Early Disclosure of Jencks Act Material (Doc. 37).

On September 19, 2017, a federal grand jury returned a two-count indictment charging Defendant Shawn Hill with "knowingly and intentionally forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfer[ring] with a Correctional Officer . . . while he was engaged in the performance of his official duties, with such acts of the Defendant involving physical contact with the Correctional Officer victim", in violation of 18 U.S.C. § 111(a) (Count I), and with possession of contraband in prison due to "knowingly possess[ing] a prohibited object", in violation of 18 U.S.C. §§ 1791(a)(2) and (b)(3) (Count II). (Doc. 1).

On September 27, 2017, Defendant Hill appeared before Magistrate Judge Mehalchick wherein the Federal Public Defender's office was appointed to represent the defendant and he entered a plea of not guilty to the indictment (Docs. 6, 7). Defendant

thereafter filed a Motion to Sever Counts (Doc. 35) and a Motion for Early Disclosure of Jencks Act Material (Doc. 37) with accompanying briefs (Docs. 36, 38). The Government filed a consolidated brief in response to both motions (Doc. 43), to which Defendant filed a reply brief (Doc. 44).[1]

The Court will address the motions in turn.

## II. ANALYSIS

### A. Motion to Sever Counts

In Defendant's first motion (Doc. 35), he requests that the Court sever Count I and Count II and order that those counts be tried separately. In support of this motion, Defendant argues that "the counts in the indictment are improperly joined pursuant to Rule 8(a) of the Federal Rules of Criminal Procedure" and that severance is further required pursuant to Federal Rule of Criminal Procedure 14(a) as he "will suffer undue prejudice as a result of the joinder of the counts in the indictment."

Federal Rules of Criminal Procedure 8 and 14 "are designed to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968).

---

[1] On April 4, 2019, following a hearing on Defendant's "Motion to Review Detention Order Pursuant to 18 U.S.C. § 3145(b)" (Doc. 46), Magistrate Judge Mehalchick granted Mr. Hill's request to be released pending trial in this action. (*See* Docs. 52, 53).

Pursuant to Federal Rule of Criminal Procedure 8(a), which governs the joinder of offenses in a federal criminal action:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a).[2] "The joinder of [a] defendant's offenses is consistent with the purpose of Fed. R. Crim. P. 8 to promote economy of judicial and prosecutorial resources." *United States v. Gorecki*, 813 F.2d 40, 42 (3d Cir. 1987) (citing *United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980)). "Joinder of charges is the rule rather than the exception and Rule 8 is construed liberally in favor of initial joinder." *United States v. Brown*, 2002 WL 32739530, at *3 (M.D. Pa. 2002) (quoting *United States v. Bullock*, 71 F.3d 171, 174 (5th Cir. 1995)). The party challenging joinder bears the burden of persuasion. *United States v. Avila*, 610 F.Supp.2d 391, 394-95 (M.D. Pa. 2009) (citing *Brown*, 2002 WL 32739530, at

---

[2] Federal Rule of Criminal Procedure 8(b), not directly at issue here, governs joinder of defendants. Rule 8(a) and 8(b) are similar in operation:

> The standards of Rule 8(a) and (b) joinder are nearly the same. Both permit joinder of offenses and defendants, respectively, when a transactional nexus exists between the offenses or defendants to be joined. Only Rule 8(a), however, permits joinder on an additional theory, that is when offenses "are of the same or similar character"[.]
>
> . . . .
>
> Theoretically, then, Rule 8(a) provides wider latitude for joinder than does Rule 8(b). Nonetheless, in many cases the focus of joinder of offenses or defendants will be the same: do the offenses or defendants to be joined arise out of a common series of acts or transactions.

*United States v. Eufrasio*, 935 F.2d 553, 570 n. 20 (3d Cir. 1991) (quoting Fed. R. Crim P. 8).

*3). "Additionally, a defendant claiming an improper joinder under Fed. R. Crim. P. 8(a) must prove actual prejudice from the misjoinder." *Gorecki*, 813 F.2d at 42 (citing *United States v. Lane*, 474 U.S. 438 (1986)).

Courts have interpreted Rule 8(a) as allowing joinder of offenses when there is a "'transactional nexus' between the items . . . being joined." *United States v. McGill*, 964 F.2d 222, 241 (3d Cir. 1992) (quoting *United States v. Eufrasio*, 935 F.2d 553, 570 n.20 (3d Cir. 1991)). This transactional nexus can be based on a physical, temporal, or logical connection between offenses, such as an interrelation of facts or evidence. *See, e.g.*, *Gorecki*, 813 F.2d at 42 (drug and firearms offenses related in circumstance when firearm found in the same house where drugs were found, indicating the firearm could have been used as part of a plan to distribute the drugs); *McGill*, 964 F.2d at 242 (joinder of tax evasion and bribery offenses proper where defendant lawyer demanded and received cash for payment of legal services, evading payment of taxes, and also used the cash received in furtherance of the bribery scheme); *United States v. Gemelstob*, 475 F.2d 157, 160 (3d Cir. 1973) (joinder of counts was permissible where assault on FBI agent "was clearly related to" charges of conspiracy to steal goods in foreign commerce). *But see, United States v. Brown*, 2008 WL 161146, at *5 (E.D. Pa. 2008) (joinder of one firearm offense not proper with later drug offenses allegedly committed seven months later; offenses were "completely unrelated physically *and* temporally" and the firearm offense "involve[d] an isolated incident

4

of [defendant's] actual possession [of] a single firearm in public with no evident connection to any drugs or drug crimes") (emphasis in original).

Here, Defendant fails to set forth any of the relevant factual background supporting the charges in this action in his motion for severance or supporting brief. Although Defendant asserts that "the two counts concern[] two separate incidents [which] are not based on the same act or transaction" and that the counts involve "proof of an entirely different set of facts at trial" (Doc. 36, at 2-3), in his brief in support of his motion, Defendant does not provide this Court with any explanation of the alleged facts which gave rise to either count in the criminal indictment. However, the Government explains the underlying facts as follows:

On June 30, 2017, at approximately 5:50 p.m., USP Canaan staff escorted inmate Shawn Hill to the Lieutenant's office holding cell in order to conduct a random visual search of the inmate. Inmate Hill was "patted down" and a corrections officer located a 6-inch metal "ice pick" style weapon in Hill's left sock. Later, at approximately 7:20 p.m., another corrections officer was attempting to put hand restraints (i.e. handcuffs) on Hill, so that Hill could be escorted from the Lieutenant's office to the prison's Special Housing Unit (SHU). The corrections officer was able to place the hand restraint on one of Hill's hands, however, Hill pulled away from the officer and was able to strike the officer over the head with the loose end of the hand restraint. Staff members then gained control of Hill and placed Hill in ambulatory restraints due to his violent behavior, until Hill could "regain control over his emotions." (Report of Lt. Helms, June 30, 2017, p. 1).

5

(Doc. 43, at 2-3; *see also, id.* at 8-9).[3]  In his Reply brief, Defendant, for the first time, briefly

provides the Court with a "recitation of the facts".  Defendant's recitation largely mirrors the

Government's explanation of the facts.  Specifically, Defendant asserts:

- On June 30, 2017, at approximately 5:50 p.m., a correctional officer at U.S.P. Canaan (C.O. 1) conducted a pat down of Mr. Hill, at which time he supposedly was found to be in possession of a shank;
- Mr. Hill was then detained in a holding cell for approximately 90 minutes. There is no allegation that Mr. Hill was anything other than calm or failed to abide by prison regulations during this time;
- At approximately 7:20 p.m. a second correctional officer (C.O. 2) approached Mr. Hill to restrain him with the intent of transporting him to the Special Housing Unit (SHU). The Government alleges Mr. Hill reacted violently to that attempt and struck C.O. 2 with the restraints.

(Doc. 44, at 3).  The Defendant's statement of the facts confirms the Government's

summary that "[b]oth offenses occurred at USP Canaan on June 30, 2017 [and t]he

offenses occurred approximately 90 minutes apart" (Doc. 43, at 3).

The Court looks to the above-described undisputed factual allegations in analyzing

Defendant's motion to sever the two Counts in the indictment.  *See McGill*, 964 F.2d at 242

("Trial judges may look beyond the face of the indictment to determine proper joinder in

limited circumstances.  Where representations made in pretrial documents other than the

indictment clarify factual connections between the counts, reference to those documents is

---

[3]  In reviewing this summary of events, the Court is aware of the Government's caution that "the above should not be taken as a complete accounting of all of the evidence the government expects to introduce at trial and should rather be viewed as a general and incomplete summary of the evidence" (Doc. 43, at n.1).

permitted.") (citing *United States v. Serubo*, 460 F.Supp. 689, 693 (E.D. Pa. 1978), *vacated on other grounds*, 604 F.2d 807 (3d Cir. 1979)).

Defendant presents only a brief argument with respect to the applicability of Federal Rule of Criminal Procedure 8(a) in this case, which consists of repeatedly broadly asserting in slightly different terms that the two alleged incidents are not connected or related and do not constitute parts of a common scheme or plan (*see* Doc. 36, at 2-3). Defendant further asserts that there is no "evidentiary overlap" between the two counts, that the proof to be offered with respect to each count is different and unrelated, and, citing to Federal Rule of Evidence 404(b)(1), that "[e]ach incident would not be admissible in separate trials to show actions in conformity with a particular character trait." (*Id.*).

Defendant has failed to meet his burden of persuasion. The undisputed alleged facts giving rise to Count I and Count II demonstrate a transactional nexus between the Counts. Preliminarily, there is clearly a temporal nexus where both charged offenses occurred less than two hours apart. There is additionally a strong physical connection where both offenses took place in the same location, *i.e.* in or around the Lieutenant's office at U.S.P. Canaan. Furthermore, both offenses occurred in the course of one sequence of interrelated events. Here, the Defendant was accompanied to the Lieutenant's office holding cell, where, upon being "patted down", the "ice pick" weapon which is the basis for Count II, was found. When the Defendant was then being escorted out of the Lieutenant's

office, after that same search, he allegedly pulled away from a corrections officer and struck

him, actions which form the basis for Count I. As the Government explains:

> On June 30, 2017, at approximately 5:50 p.m., USP Canaan staff escorted
> inmate Shawn Hill to the Lieutenant's office holding cell in order to conduct a
> random visual search of the inmate. A "pat down" search of Hill by a corrections
> officer resulted in the seizure of a 6-inch "ice pick" style weapon from Hill's left
> sock. Hill was placed in a holding cell. Approximately 90 minutes later, at 7:20
> p.m., while Hill was still in a holding cell, another corrections officer attempted
> to place hand restraints/handcuffs on Hill, in order to transport Hill to the Special
> Housing Unit (SHU). . . . Hill had been placed in a holding cell **because** of the
> weapon incident. Hill was being transported to the SHU **because** of the weapon
> incident. The officer was in the process of "cuffing" Hill **because** Hill was being
> transported to the SHU.

(Doc. 43, at 8) (bold in original). Both charged offenses therefore arise out of the same

sequence of events and, were it not for Hill being initially taken to the Lieutenant's office and

patted down, a corrections officer would not have been shortly thereafter attempting to put

handcuffs on Hill to escort him out of the Lieutenant's office.

Although Defendant asserts that there is no "evidentiary overlap" between the two

counts, that the proof to be offered with respect to each count is different and unrelated,

and, citing to Rule 404(b)(1), that "[e]ach incident would not be admissible in separate trials

to show actions in conformity with a particular character trait" (Doc. 36, at 3), Defendant fails

to provide any substantive argument or case law in support of these arguments. For

reasons discussed, *infra*, Defendant's assertions with respect to the admissibility of certain

evidence are insufficient to merit severance in this action. Further, while Defendant is

correct that Rule 404(b)(1) precludes "evidence of a crime, wrong, or other act . . . to prove

8

a person's character in order to show that on a particular occasion the person acted in accordance with the character," pursuant to Rule 404(b)(2), such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Although nothing in this memorandum opinion should be interpreted by the parties as a ruling by this Court on the admissibility of any evidence at this time, the Court notes that evidence of Defendant's first offense, possession of a prohibited object, may be admissible under Rule 404(b)(2), or other applicable rules of evidence, in a trial on the charge of assaulting a corrections officer, for a purpose other than showing that the Defendant acted in accordance with his character or a particular character trait.

For the aforementioned reasons, Defendant's request that Count I and Count II be severed pursuant to Rule 8(a) will be denied.

However, even if offenses are properly joined under Rule 8(a), Federal Rule of Criminal Procedure 14 permits courts to order separate trials or devise other relief if the joinder appears to prejudice a defendant.

> If the joinder of offenses or defendants in an indictment, information, or a consolidation for trial appears to prejudice a defendant or the government, the court *may* order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a) (emphasis added). When determining whether to sever counts, "[t]he trial judge is best situated to weigh possible prejudice to the defendant against interests of judicial economy." *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981). "Mere

9

allegations of prejudice are not enough; and it is not sufficient simply to establish that

severance would improve the defendant's chance of acquittal. . . . Rather, [the defendant]

must demonstrate clear and substantial prejudice resulting in a manifestly unfair trial." *Id.*

(internal citations omitted). *See also, Brown*, 2008 WL 161146, at *4 ("To establish that

severance is warranted, the defendant has the burden of demonstrating 'clear and

substantial prejudice' that would result in a manifestly unfair trial") (quoting *Eufrasio*, 935

F.2d at 568). This is a "stringent requirement[]," necessitating a specific showing of how a

single trial on all counts would prejudice a defendant. *Gorecki*, 813 F.2d at 43 (citations

omitted). When evidence is "easily compartmentalized by the jury," or "a case is 'relatively

straightforward and discrete, not involving overly technical or scientific issues,'" clear and

substantial prejudice does not exist, and severance is not required. *United States v. Fumo*,

2008 WL 109667, at *2 (E.D. Pa. 2008) (citing *Reicherter*, 647 F.2d at 400, then quoting

*United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005)). Similarly, if evidence relating to

one set of charges would be admissible in a separate trial on the other set of charges,

severance is not required. *Gorecki*, 831 F.2d at 42-43; *Fumo*, 2008 WL 109667, at *3.

Nevertheless, the lack of perfect cross-admissibility of evidence between sets of charges if

separate trials were held does not mean that a single trial would be prejudicial. *See*

*Eufrasio*, 935 F.2d at 568 (citing *United States v. Sandini*, 888 F.2d 300, 307 (3d Cir.

1989)); *Bean v. Calderon*, 163 F.3d 1073, 1085 (9th Cir. 1998) (citations omitted). Even if

there is a risk of prejudice, a district court has discretion to fashion an appropriate remedy

short of severance, such as limiting instructions to the jury. *Zafiro v. United States*, 506 U.S. 534, 538-539 (1993) ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion") (citations omitted); *see also, Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (finding that generally "juries are presumed to follow their instructions").

Defendant Hill argues that the potential for undue prejudice from a single trial on both counts is "substantial." (Doc. 36, at 4). In particular, the Defendant contends that "[t]he more wrongdoing of which Mr. Hill is accused, the more likely the jury is to think that he must be guilty" and that "putting . . . the charges together will increase the jury's hostility and may result in a verdict on each charge, which is entirely influenced by the evidence presented on the other charges." (*Id.* at 4). Hill also contends that there is a danger that "the multiple counts will function as character evidence for each of the other counts" and conclusorily states that "there is a significant danger that the jury will believe that if he possessed one weapon, he must have also committed an assault." (*Id.* at 5). Defendant thus concludes that "[t]he jurors will not be able to segregate the facts of each incident in their minds during deliberation in a single trial and will likely consider each incident as corroboration of the others." (*Id.*).

Defendant's general and generic arguments with respect to his concern that the trier of fact will conflate the charges and be unable to separate the evidence, and the elements, necessary to establish each count are insufficient to demonstrate "clear and substantial

prejudice." Preliminarily, Defendant's broad assertions with respect to the purported negative effects of trying a defendant on more than one charge at a time can be claimed with respect to *any* case in which a defendant is charged with multiple offenses. To accept that the counts in this case should be severed for the sole generalized reason that it is "more likely the jury is to think that he must be guilty" and that "putting . . . the charges together will increase the jury's hostility and may result in a verdict on each charge" would nullify the purpose of Rules 8 and 14 to promote judicial economy and efficiency and to avoid a multiplicity of trials, *see Bruton*, 391 U.S. at 131 n.6. Here, not only does a transactional nexus exist between the charged offenses, the charges against Defendant do not involve "overly technical or scientific issues" nor do they present complex issues that may confuse a jury. Rather, both alleged offenses – assault of a corrections officer and possession of a prohibited object – can be easily characterized as "relatively short and simple." *See United States v. Rich*, 326 F.Supp.2d 670, 679-680 (E.D. Pa. 2004) ("Because the evidence as to each of the offenses was relatively short and simple, there was no prejudice from joining the separate offenses. *See United States v. Lotsch*, 102 F.2d 35, 36 (2d Cir. 1939) (L. Hand, J.) (holding that where evidence as to each of three counts was 'short and simple' and 'there was no reasonable ground for thinking that the jury could not keep separate what was relevant to each[,]' joinder was proper).").

In the present action, any prejudice that Hill speculates he may suffer should both counts be tried in a single trial is capable of being cured through limiting instructions. *See*

*e.g., United States v. Riley,* 621 F.3d 312, 335 (3d Cir. 2010) (finding that where Defendant

"merely assert[ed] that the jury was unable to compartmentalize the evidence" and did not

pinpoint any specific instance of substantial prejudice resulting in an unfair trial, and where

District Court gave a strict limiting instruction, there was "persuasive evidence" that the

Court's refusal to sever did not prejudice the defendant and there was no "serious risk" of

"compromising a specific trial right."); *United States v. Stout,* 499 F.Supp. 598, 601 (E.D.

Pa. 1980) ("'Speculation that the trial jury will not follow the instructions of the Court with

respect to compartmentalizing the evidence of the (various) counts of the indictment will not

justify a severance under [Rule 14]'") (quoting *United States v. Cohen,* 444 F.Supp. 1314,

1317 (E.D. Pa. 1978)). *See also, Zafiro,* 506 U.S. at 540-541 (proper jury instructions can

cure a risk of prejudice and "juries are presumed to follow their instructions.").

Finally, Defendant argues that the Court must consider the admissibility of evidence

when deciding whether to sever the Counts. (Doc. 36, at 5-6). Hill asserts:

> In a trial on the alleged assault, evidence of Mr. Hill's alleged possession of a
> weapon would not be relevant under Rule 404(b) of the Federal Rules of
> Evidence to any issue other than Mr. Hill's propensity to commit the charged
> crimes and therefore would not be admissible. Likewise, in a trial on the count
> relating to the possession of an alleged weapon, evidence of the assault is not
> relevant and would not be admissible. Moreover, under Rule 403 of the Federal
> Rules of Evidence, any slight probative value of the evidence of the assault or
> the possession of the weapon would be substantially outweighed by the danger
> of unfair prejudice and thus inadmissible.

*(Id.).*

When multiple charges or sets of charges are joined in a single trial, all evidence

relating to one charge or set of charges need not always be admissible in a hypothetical

separate trial on the other charge or set of charges. *See Eufrasio*, 935 F.2d at 568 (finding

in the context of joinder of defendants and charges that "[p]rejudice should not be found in a

joint trial just because all evidence adduced is not germane to all counts against each

defendant") (citing *Sandini*, 888 F.2d at 307); *Bean*, 163 F.3d at 1085 ("[W]e are mindful that

prejudice generally does not arise from joinder when the evidence of each crime is simple

and distinct, even in the absence of cross-admissibility") (citing *United States v. Johnson*,

820 F.2d 1065, 1071 (9th Cir. 1987); *Drew v. United States*, 331 F.2d 85, 91 (D.C. Cir.

1964)). Here, the crimes charged are relatively simple, not involving overly specialized or

technical issues, and the evidence is able to be compartmentalized. In these

circumstances, careful trial management by the parties and the Court and limiting

instructions presented to the jury will suffice to minimize the risk of prejudice if any evidence

is admitted which is not directly relevant to one of the charges.

Further, even if uniform cross-admissibility of evidence on the two counts was

required to avoid severance, the Court is unconvinced that evidence regarding each of the

counts would not be admissible in hypothetical separate trials. The Court is mindful of the

challenges of considering admissibility of evidence in advance of trial and undertakes an

admissibility analysis only for the purpose of considering the risk of clear and substantial

prejudice to Hill if a single trial on both counts is held.[4] In considering admissibility herein, Federal Rules of Evidence 402, 403, and 404 are of critical importance. Fed. R. Evid. 402 (relevant evidence admissible; irrelevant evidence not admissible); Fed. R. Evid. 403 (relevant evidence can be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice"); Fed. Evid. 404(a) (evidence of person's character or character trait not admissible to prove person acted in accordance with that character or trait on particular occasion); Fed. R. Evid. 404(b) (evidence of crimes, wrongs, or other acts not admissible as character propensity evidence but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident").

Here, there is no question that evidence of the alleged assault or alleged possession of a weapon would not be admissible as propensity evidence with respect to the other charged offense. However, with respect to the allegations that Hill possessed a prohibited object, the Court agrees with the Government that such evidence may be admissible under Rule 404(b) as relevant evidence of Defendant's motive, opportunity, intent, absence of mistake, or the lack of accident when committing the subsequent alleged offense of assaulting a corrections officer (see Doc. 43, at 13-14). See, e.g., Gorecki, 813 F.2d at 43 (evidence relating to drug possession admissible under Rule 404(b) to show motive for not

---

[4] As previously noted, the Court's statements in this Memorandum Opinion on issues of admissibility should not be construed or understood by the parties as a ruling on the admissibility of any evidence which may be presented at trial.

15

registering a firearm); *Fumo*, 2008 WL 109667, at \*3 (evidence of fraud charges admissible under Rule 404(b) to show motive for obstruction of justice charges and "simple allegations that the jury will convict based on criminal propensity are not sufficient for severance"); *United States v. Chagra*, 754 F.2d 1186, 1189 (5th Cir. 1985) (evidence relating to murder charge admissible under Rule 404(b) to show motive and intent to commit obstruction of justice and drug conspiracy crimes to finance escape from prison).

Nonetheless, the Court recognizes that evidence that is relevant pursuant to Rule 404(b) is still subject to the general strictures limiting admissibility under other federal rules of evidence, including Rule 403. *See Huddleston v. United States*, 485 U.S. 681, 687-688 (1988) (if evidence is offered for "a proper purpose [under Rule 404(b)], the evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403"); *United States v. Butch*, 256 F.3d 171,175 (3d Cir. 2001) (setting forth the four-prong test governing admissibility of evidence pursuant to Rule 404(b), including that a Court weigh "the probative value of the evidence against its prejudicial effect under Rule 403"). In this case, a balancing of the factual assertions presently before the Court lead to a conclusion that it is likely that the probative value of the evidence of the assault or the possession of the prohibited weapon, when offered in the same trial, is not substantially outweighed by a danger of unfair prejudice or confusing the issues. For example, as explained *supra*, evidence of Defendant's alleged possession of a weapon, and the consequences thereof, is probative of Defendant's possible motive, opportunity, or absence of mistake in the

subsequent alleged assault on a corrections officer. In addition, as argued by the Government, "[s]uch evidence may also negate a possible claim by the defendant of self-defense" (Doc. 43, at 14). Thus, in weighing the relevance and probative value of the evidence underlying each charge against the prejudice to Hill that might result from its admission, the Court concludes that the evidence may be admissible under Rule 403 for certain purposes and any prejudice can be significantly reduced by specific instructions to the jury as to the limited purpose for which it can consider such evidence.

For the foregoing reasons, Defendant Hill's Motion to Sever Counts (Doc. 35) will be denied.

## B. Motion for Early Disclosure of Jencks Act Material

Defendant's second motion, entitled "Motion for Early Disclosure of Jencks Act Material" (Doc. 37), requests that all Jencks Act material be disclosed to him two weeks prior to jury selection. The Government opposes this motion, but represents that, with the possible exception of limited circumstances, it "intends to provide the requested Jencks Act material to defense counsel three days prior to trial." (Doc. 43, at 16).[5]

Defendant seemingly recognizes that the Government has agreed to provide the majority, if not all, of the Jencks Act material several days prior to trial. (See Doc. 38, at 3)

---

[5] The Government's representation that it will provide the materials several days prior to trial is a well-accepted practice in federal prosecutions. See e.g., United States v. Maury, 695 F.3d 227, 248, n.18 (3d Cir. 2012) (noting that while "the government has no obligation to produce Jencks material until the witness has testified", "despite this limitation, many federal prosecutors routinely turn over Jencks material a few days before the witness testifies.").

(acknowledging that Government generally discloses Jencks Act material the weekend prior to jury selection). Defendant further acknowledges that neither the Jencks Act nor Federal Rule of Criminal Procedure 26.2 *require* the Government to disclose the requested material in advance of trial, but argues that "strict application of the Jencks Act" violates a number of constitutional guarantees. (*Id.* at 2-3). Defendant thus asserts that:

> Exceptions to the Jencks Act's pretrial prohibition established in the criminal rules, rules of evidence and case law include: statements of witnesses called at preliminary hearings and pretrial detention hearings; grand jury testimony of government witnesses subject to the "particularized need" test; hearsay declarant statements under the residual exception; and the court's supervisory authority.

(*Id.* at 3).

> The Federal Rules of Criminal Procedure provide that
>
> [a]fter a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

Fed. R. Crim. P. 26.2(a). Similarly, the Jencks Act also requires that

> [a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

*Id.* at § 3500(b). The Jencks Act further provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery,

or inspection until said witness has testified on direct examination in the trial of the case."

18 U.S.C. § 3500(a). A "statement" is defined in the Jencks Act as follows:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

*Id.* at § 3500(e).

Thus, with respect to prior statements of witnesses that the Government intends to call at the time of trial, both the Jencks Act and the Federal Rules of Criminal Procedure make clear that the Government does not need to turn over the information requested by Defendant in this case until the witness whose statement is at issue has testified on direct examination at trial.[6] As the Third Circuit made clear, "[t]he blunt command of the [Jencks Act] together with the unequivocal legislative history has led to unbroken precedent in the Courts of Appeals denying to district courts the power to compel production of the statements of government witnesses until conclusion of direct examination at the trial."

---

[6] Federal Rule 26.2 also applies to statements given at a detention hearing and at various other hearings. *See* Fed. R. Crim. P. 26.2(g). Here, Defendant asserts that an "[e]xception[] to the Jencks Act's pretrial prohibition established in the criminal rules, rules of evidence and case law include[s] statements of witnesses called at preliminary hearings and pretrial detention hearings" (Doc. 38, at 3) and that he is therefore entitled to this information. A review of the docket reveals that at no time during any hearing involving Hill in this action, including during his preliminary hearing or detention hearing, did the Government call any witness in support of its position. Defendant's argument that he is entitled to those witness statements is therefore inapplicable here.

*United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978). *See also, United States v. Moyer*, 726 F.Supp.2d 498, 513 (M.D. Pa. 2010) (denying Defendant's motion for early production of material under the Jencks Act and finding that, where the Government had agreed to provide the Jencks material three days prior to trial, "[i]t is not within the power of the District Courts to accelerate" the Government's timetable); *United States v. Eisenberg*, 773 F.Supp. 662, 683 (D.N.J. 1991) (denying Defendant's motion for disclosure of the pretrial statements of a Government witness prior to that witness's testimony, citing to the Jencks Act and Rule 26.2, and finding that although the Government stated that it would disclose any Jencks Act material the day before that witness testified, "it is not required to do so."); *United States v. D'Elia*, 2007 WL 2358487, *7 (M.D. Pa. 2007) (denying Defendant's motion under the Jencks Act and Rule 26.2 to require the Government to disclose Jencks Act material at least thirty days prior to trial).

To the extent that Defendant is further requesting the general disclosure of any information to impeach a witness's credibility (*see* Doc. 38, at 2, 5), it is unclear what information to which Defendant specifically believes he is entitled. It is manifest that under *Brady v. Maryland*, the Government has a continuing obligation to turn over evidence favorable to the Defendant, "where the evidence is material either to guilt or punishment." 373 U.S. 83, 87 (1963). In *Giglio v. United States*, the Supreme Court further required that the Government disclose any impeachment information that it possesses regarding its own witnesses, such as promises for leniency made in return for testimony. 405 U.S. 150, 154-

155 (1972). "The holding in *Brady v. Maryland* requires disclosure only of evidence that is

both favorable to the accused and 'material either to guilt or to punishment.'" *United States*

*v. Bagley*, 473 U.S. 667, 674 (1985). As such, "the individual prosecutor has a duty to learn

of any favorable evidence known to the others acting on the government's behalf in the

case" and disclose that information to the defendant. *Kyles v. Whitley*, 514 U.S. 419, 437

(1995) (citing *Brady*, 373 U.S. at 87). However, the Third Circuit has explained that due

process requires only that *Brady* material be disclosed to the defense "in time for its

effective use at trial." *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983). In *Higgs*, the

Circuit found that the *Brady* material at issue:

> was information that [Defendants] could use on cross-examination to challenge
> the credibility of government witnesses. For that type of material, we think
> [Defendants'] right to a fair trial will be fully protected if disclosure is made the
> day that the witness testifies. Disclosure at that time will fully allow appellees
> to effectively use that information to challenge the veracity of the government's
> witnesses.

*Id.*

Here, Hill does not specifically explain why the information to impeach witnesses'

credibility is needed prior to the time that the Government has stated it will produce it. Nor

does the defendant assert that the Government has not turned over any information that it

has already discovered which may be subject to early disclosure pursuant to *Brady* and its

progeny. Thus, in accordance with *Brady*, *Giglio*, and Third Circuit precedent, and in light of

the information currently before this Court, it appears that the disclosure of any

impeachment information at the time set forth by the Government will not prevent the

21

defendant from "its effective use at trial." *See e.g., United States v. Villarman-Oviedo,* 325 F.3d 1, 13 (1st Cir. 2003) (finding that the Government did not violate *Brady, Giglio,* or the Jencks Act when it turned over a witness's plea and cooperation agreement four days before trial).

Nonetheless, to the extent that the Government has not already done so, the Court will order the Government to turn over all information that meets the *Brady* and *Giglio* standards for disclosure at the appropriate time, and to fully comply with its duty to learn of any as-yet-unknown evidence properly disclosable under *Brady* and *Giglio.*

With respect to the Defendant's assertion that grand jury material constitutes an "exception" to the Jencks Act subject to a "particularized need test" and the Court should therefore order its disclosure, Defendant fails to meet his burden of establishing this need. It "is settled federal policy that the grand jury system requires secrecy of grand jury proceedings. Rule 6(e) of the Federal Rules of Criminal Procedure is intended to preserve this norm of secrecy by preventing the disclosure of matters occurring before a grand jury." *In re Grand Jury Matter,* 682 F.2d 61, 63 (3d Cir. 1982) (internal citations omitted). Thus, a "party moving for court-ordered disclosure [of grand jury proceedings] bears a heavy burden of proving to the court that 'the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" *Eisenberg,* 773 F.Supp. at 707 (quoting *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S.

211, 222 (1979)). "The most significant factor which a party seeking disclosure must show is 'particularized need' for the information." *Giampa*, 904 F.Supp. 235, 287 (D.N.J. 1995) (collecting cases). "The Supreme Court has repeatedly stressed the wide discretion given district courts in evaluating whether disclosure of grand jury materials would be appropriate. *See, e.g., United States v. John Doe, Inc. I*, 481 U.S. 102, 116, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987)." *United Kingdom v. United States*, 238 F.3d 1312, 1320 (11th Cir. 2001).

Here, Defendant requests the pretrial disclosure of the grand jury testimony of "prospective government witnesses", arguing without any further support that "the particularized need is tied to the complexity of the case and the severity of the possible punishment." (Doc. 38, at 4). As this Court has previously noted, the present case does not present complex or overly technical issues; rather, Defendant is charged with assault of a corrections officer and possession of a prohibited object, two charges reasonably characterized as simple and uncomplicated. Furthermore, while recognizing that any amount of incarceration is punitive, Defendant has failed to explain how the "severity of the possible punishment" in this case in some way mitigates in favor of a finding that there is a "particularized need" for the requested grand jury material.

Citing to Federal Rule of Evidence 807, Defendant next argues that "if the government intends to introduce a hearsay statement under the residual exception, the government must provide the defendant with notice, sufficiently in advance of the trial, of its

intent to use the statement, as well as the particulars of it, including the name and address

of the declarant." (Doc. 38, at 4) (internal quotation marks omitted).

> Pursuant to Fed. R. Evid. 807, the "residual exception" rule:
>
> (a) In General. Under the following circumstances, a hearsay statement is not
> excluded by the rule against hearsay even if the statement is not specifically
> covered by a hearsay exception in Rule 803 or 804:
>   (1) the statement has equivalent circumstantial guarantees of
>   trustworthiness;
>   (2) it is offered as evidence of a material fact;
>   (3) it is more probative on the point for which it is offered than any other
>   evidence that the proponent can obtain through reasonable efforts; and
>   (4) admitting it will best serve the purposes of these rules and the interests
>   of justice.
> (b) Notice. The statement is admissible only if, *before the trial or hearing*, the
> proponent gives an adverse party reasonable notice of the intent to offer the
> statement and its particulars, including the declarant's name and address, so
> that the party has a fair opportunity to meet it.

Fed. R. Evid. 807 (emphasis added). The Third Circuit has repeatedly explained that "'[t]he

residual hearsay exception is to be used only rarely, and in exceptional circumstances, and

is meant to apply only when certain exceptional guarantees of trustworthiness exist and

when high degrees of probativeness and necessity are present.'" *United States v.*

*Lawrence*, 349 F.3d 109, 117 (3d Cir. 2003) (quoting *Bohler-Uddeholm Am., Inc. v. Ellwood*

*Gp., Inc.*, 247 F.3d 79, 112 (3d Cir. 2001)).

The Government does not address Defendant's request pursuant to Rule 807,

instead solely asserting that it is only required to turn over Jencks Act material, including

witness statements, as statutorily prescribed by the Jencks Act and Rule 26.2. This

response is insufficient. Rule 807 specifically provides that the statement at issue under

24

this residual exception is admissible only if the adverse party is provided with "reasonable notice" of the intent to offer the statement and its particulars *before the trial or hearing.* Thus, to the extent that the Government is aware of any information responsive to the defendant's request pursuant to Rule 807 which has not already been provided to the defendant, the Court will order the Government to provide notice of the intent to offer any statement and its particulars pursuant to Rule 807 no later than 10 days before trial. To the extent that this information may also be subject to disclosure pursuant to *Brady*, *Giglio*, or other Federal Rules of Criminal Procedure, the Government will also be ordered to timely produce such information in accordance with its responsibilities under those applicable laws.

Accordingly, for the reasons above, Defendant's Motion for Early Disclosure of Jencks Act Material (Doc. 37) will be granted in part and denied in part as set forth herein.

### III. CONCLUSION

For the foregoing reasons, Defendant Shawn Hill's Motion to Sever Counts (Doc. 35) and Motion for Early Disclosure of Jencks Act Material (Doc. 37) will be decided as set forth in this memorandum opinion. A separate Order follows.

Robert D. Mariani
United States District Judge

25